# Cumberland Valley Mutual Protection Company *versus* Schell.

Where a risk is taken and estimated on the faith of representations made by the insured, the law requires that this representation shall truly and completely express his knowledge of the dangers to which the property is exposed, and the contract will be void if they do not.

Where, however, the insurers do not depend upon the representations of the insured, but upon their own knowledge of the character of the risks, the representations of the insured are immaterial; though a withholding of information, tending to increase the risk, would be incompatible with good faith, and would avoid the contract.

If an agent of the insurer goes upon the premises and examines and describes the property, it will not be presumed that an application taken by such agent, which merely individuates the property insured, was intended as a representation of the hazards to which the premises were exposed.

A change of the use of the property after the contract, which increases the hazard, suspends the insurance during its continuance.

The relation of a co-corporator in a mutual insurance company is only consummated by the fact of insurance; in the act the insured is a stranger.

This, therefore, does not convert the previous acts of examination and description by the agent of the company into his acts, and change it into a representation by him.

An over-estimate of the value of the property by the agent, will not avoid the policy unless the insured has taken some fraudulent part in it.

The by-law of a company which prohibits an insurance that exceeds two-thirds of the estimated value of the property insured, is not intended as a condition of the contract, but as a direction of the discretion of the officers of the company in making the insurance.

Where the value of the buildings, at the time of the fire, is put in issue by the pleadings, evidence tending to show such value is relevant and admissible.

In estimating such value, the rental of the buildings consumed is not so remotely circumstantial as to be excluded on that account.

ERROR to the Common Pleas of *Mifflin county*

This was an action of debt on a policy of insurance by Charles Schell against The Cumberland Valley Mutual Protection Company. On the 18th July, 1848, the plaintiff effected an insurance, in the company of the defendants, on a frame house, situate in the borough of Lewistown, for the sum of $1000, being two-thirds of the estimated value, for five years. The resident agent of the company went upon the premises and filled up the description and application, and upon that the policy was issued. At the time of the application the plaintiff resided in the house, and it was occupied by him as a fancy, variety, and confectionery store, and as a mineral water manufactory, bath-house, &c. The building was consumed by fire on the night of the 9th April, 1852, and this action was brought to recover the amount of the insurance.

The defendants resisted a recovery for the reason, among others, that the plaintiff had over-estimated his property. That

a by-law of the company prohibited any insurance being made for more than two-thirds of the value of the buildings. They alleged that the plaintiff offered to sell the lot with the buildings, previous to the destruction of the latter, for the sum of fifteen hundred dollars, and that the lot was subsequently sold for $900, and that, in consequence of such over-estimate, the policy was void. The defendant gave evidence to prove the value of the buildings. They also contended that there had been alterations, without the consent of the company, which increased the risks, and that the plaintiff was thereby prevented from recovering for the loss of the building.

They further contended and proved that certain matters, among which was an oven, calculated to increase the risks, had been omitted in the application, and that these omissions rendered the policy void. That after the insurance the plaintiff had changed a part of it into an oyster and eating saloon, and that stoves and other modes of heating were used therein which increased the hazards. The plaintiff, a short time before the fire, had removed from the premises, and they were vacant at the time the fire occurred. The defendants insisted, that leaving the premises unprotected and exposed to incendiaries, prevented a recovery. They also attempted to prove that the plaintiff had himself set fire to the building.

After the defendants had closed their testimony the plaintiff offered to prove the value of the property at the time of the fire— to which the defendants objected, but the court below overruled the objection and sealed a bill of exception.

He further offered to prove that he had personal property in the house, at the time of the fire, to repel the idea that he had burnt the premises. This was also objected, and admitted by the court under exceptions. He also, under a similar exception, was permitted to prove that the building had been rented for $150 *per annum.*

The plaintiff's affidavit, made after the fire, stated that improvements to the amount of $400 had been made to the premises subsequent to the insurance.

The defendants requested the court to charge as follows:—

"1st. That under no circumstances could the plaintiff recover more than the two-thirds of the actual value of the buildings at the time the insurance was taken.

"2d. That if the plaintiff in his application for insurance grossly over-estimated the value of his property, it avoids his policy of insurance and he cannot recover.

"3d. That if the jury believe from the evidence that the plaintiff, in his application for insurance, did not make known to the defendant the existence of an oven and bakery attached to, and which were frequently used on the premises, then he did not make

[Cumberland Valley Mutual Protection Company *v.* Schell.]

known all the material facts, and therefore he cannot recover, although the fire did not originate in the oven or bakery.

"4th. That inasmuch as Mr. Schell, after date of the application and insurance, and without the consent of the company, changed and converted a bath-house and ice-house, which were upon, and part of, the premises at the time of the application and insurance, and in which neither stoves nor fire were used, into an oyster saloon in which stoves and fire were used, and having stove-pipes running through either the ceiling or side,—he cannot recover.

"5th. That if the jury are induced to believe from either positive or circumstantial testimony, that the plaintiff fired his premises at the time they were destroyed, he cannot recover.

"6th. That the plaintiff, in insuring his premises while dwelling in the house at the time, and insuring 'furniture' therein, held out the idea that it was to be among other purposes used as a dwelling-house, and by so doing, contracted with the defendant, in consideration of its insurance, to occupy the buildings and give them the care and watchfulness of a family, and such care as is usual in occupied dwelling-houses; and that by moving out of the house and leaving it exposed and entirely vacant for eight or ten days, he increased the risk of the company, forfeited his insurance, and cannot recover.

"7th. That inasmuch as the policy fixes the time and the manner when and in which the company is to be made liable for loss by fire, which is within three months after due notice and proof thereof *made by the insured* in conformity with the policy, the act of incorporation, and by-laws, and the plaintiff has made no proof of the kind, he cannot recover.

"8th. That the plaintiff in his application having represented that the premises were to be used for a mineral water factory and bath-house, it was a warranty that the buildings insured would be used for those purposes of trade and business and no other, during the continuance of the policy; and that by converting part of the premises into an oyster saloon and eating-room, he forfeited his insurance and cannot recover."

The court below (WILSON, P. J.), after commenting on the evidence, and referring the question to the jury, whether the plaintiff had set fire to the building, answered the foregoing points as follows:—

"To the 1st. There is nothing in evidence to show that such measure of value should be adopted. Even if proven and made part of the policy, we would not say, as here requested, that under no circumstances could the plaintiff recover more than two-thirds of the actual value of the buildings at the time the insurance was taken. In the case of Fuller *v.* The Boston Mutual Fire Insurance Company, 4 *Met.* 206, the true rule under such a state of facts is laid down that would apply here, that 'though a fire

[Cumberland Valley Mutual Protection Company *v.* Schell.]

insurance company are authorized by their charter to insure property to only three-fourths of its value; yet, if they deliberately make a valuation of property and insure three-fourths only of the amount of such valuation, they are bound thereby, in the absence of fraud, collusion, or misrepresentation, and cannot show in an action against them to recover a loss that the property was insured for more than three-fourths of its value.'

" To the 2d. This is more properly applicable to a case where the estimate of the insured is relied on, and not to a case situated like the present, where the estimate is taken by the agent of the company on a view of the premises, or joins with the insured in making the estimate on such view, unless the agent was, through misrepresentations or a suppression of facts by the insured, imposed on. In such case it would avoid the policy. But if innocently done on such view by the agent, and no fraud or collusion shown between the agent and the insured, or misrepresentations or suppression of facts by the insured, it will not avoid the policy; and the proposition in the general terms here stated we refuse to answer as requested.

" To the 3d. A mere inadvertent omission of facts material to the risk and such as the insured should have known to be so, will avoid the policy; and if in this case the plaintiff knew that the oven and bakery was a fact material to the risk and did not make it known to the agent, the law would be as here stated, and the plaintiff cannot recover. But if he did not know it was material to the risk, and the agent who did is on the premises to examine for himself and does not bring it to his knowledge, and an oven being a matter open to view, the omission of the plaintiff to make it known to the company, and that they were frequently used on the premises, would not avoid the policy or defeat the plaintiff's right to recover.

" To the 4th. We also refuse this instruction. The application and policy represent it as being used as a mineral water factory and bath-house, and not that he shall so continue to use it—and the policy provides a different rule: ' That in case the before-mentioned property or any part thereof, shall at any time during the continuance of the policy be so altered or be appropriated, applied, or used, to, or for, the purpose of carrying on therein any trade, business, or vocation, which, according to the class of hazards or rates adopted by the company and annexed to their by-laws, and hereby referred to, would increase the risk or hazard, unless it be by the consent and agreement of the company endorsed upon the policy, then and from thenceforth, so long as the same shall be so appropriated, applied, or used, the policy shall cease and be of no force or effect.' That is, it shall cease and be of no force or effect, without the consent of the company endorsed where the alteration, appropriation, or use of the

property insured, or any part of it, increased the risk or hazard; and this would present a question for you of whether the alteration, appropriation, or use, of part of the property as proved, increased the risk or hazard. If you find that it did so increase the risk and hazard according to the class of hazards and rates adopted by the company, without their consent and agreement, the plaintiff will not be entitled to recover. But if it did not increase the risk and hazard according to their by-laws, the policy would cease to have force and effect, and the plaintiff would not be defeated in his action. The general principle contended for by this point is applicable to a policy stipulating a purpose for which the property insured is to be occupied, and not merely reciting how it is used at the time of the policy being taken. And if you find that such change and conversion did increase the risk—to defeat the plaintiff's recovery on this ground, you must find that he continued such change and conversion of the property to the time of the fire, for by the terms of the charter it is only during the continuance of such change and conversion that the policy shall cease and be of no effect or force.

"To the 5th. We answer this point as requested, and if you find from either the positive or circumstantial evidence in the case, that the plaintiff fired the premises, he cannot recover.

"To the 6th. We do not so understand the law to be. We would suppose tenanted property may be insured and a change of tenants may not avoid the policy, and that an insured may rent the property insured in which he resides, and that such would be in the contemplation of the insurers, or they would have a provision against it in their policy; and on a change of tenants or of the occupancy of the owner to his tenant, where it may remain unoccupied for eight or ten days in such way as not to increase the risk or render void the policy; and we refuse to instruct you as matter of law, as by this point requested, that the facts as stated increased the risk of the company, and forfeited plaintiff's insurance, and that he cannot recover.

"To the 7th. The plaintiff has set out in his declaration, notice having been given three months before the bringing of this suit, which the pleadings do not deny or put in issue. If it did put the fact in issue, there is proof that an agent of the company was here at the time he had Schell's deposition taken, inquiring into the matter; and as decided in Rumage *v*. The Insurance Company, 1 *Green* 110, such notice of the fire would be sufficient. It was there held that where the conditions of insurance required that notice of loss should be given forthwith, and it appeared that officers of the insurers were on the ground of the fire the day after the fire, for the purpose of examining into the matter, it was sufficient evidence of notice, (2 *U. S. Dig. Sup.*, page 203,) and we decline the instruction requested.

"To the 8th. We do not understand such to be the representation in the policy or application. They describe the building '43 feet long, 9 wide—used as a mineral water factory and bath-house' at the time of the policy being taken, but not that it was to be continued so to the termination of the policy. The policy contemplates a change, appropriation, or use of the property by the owner, when it does not increase the risk or hazard, and where it does increase the risk and hazard, that during the continuance of such change the policy shall cease and be of no force and effect without the agreement and the consent of the company. We therefore refuse to instruct you as requested.

"You will then apply the facts as you shall find them to the principles we have stated, and say whether the plaintiff is entitled to recover. If you find for the plaintiff, then you have to determine the amount which would be the actual value of the property. The policy provides for making good to the insured all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property specified. That amount you will ascertain from the evidence on the subject of its value. The witnesses differ in their estimate of its value; you have heard them and will decide from their testimony fixing the amount. On that amount the plaintiff will be entitled to interest from three months after notice, which would be from three months after the date of Mr. Schell's deposition taken by the company, which would be from the 28th August, 1852; the company by its officers or agent having had notice as early as the date of that deposition, which they took on the 28th of April, 1852, when they came here to investigate the subject, and have produced the deposition in evidence."

The jury found for the plaintiff for the whole amount of insurance and interest.

The errors assigned were to the admission of the testimony on part of plaintiff relative to the value of the property at the time of the fire, and the answers of the court to defendant's points.

*S. S. & D. W. Woods*, for plaintiff in error.

*Elder*, for defendant in error.

The opinion of the court was delivered by

LOWRIE, J.—When a risk is estimated, and taken on the faith of representations made by the insured, it is plain good sense that dictates the law requiring that his representations shall truly and completely express his knowledge of the dangers to which the property is exposed, and that avoids the contract if they do not.

[Cumberland Valley Mutual Protection Company *v.* Schell.]

This must be so, else a contract of indemnity against one character of hazard is changed so as to protect against a different one.

But insurers are not always dependent upon the representations of the insured for the character of the risk, and they may make their contracts on their own knowledge of it; and then we do not look for representations, for they are entirely out of place; though there might, even then, be a withholding of information of circumstances plainly tending to increase the risk, which would avoid the contract, because incompatible with good faith.

In fire insurances, it has become so common to have the property examined and described by an agent of the insurers before making the contract, that we cannot presume that an application, which, like this one, merely individuates the property, is intended as a representation of the hazards to which it is exposed. In this case, certainly, there are no representations of the value or of the hazards, for the whole application, on which the contract was founded, was drawn up by the agent of the company, and it is reasonable to say that every word of description in it, is used merely to individuate the property. Evidently it was not intended to describe the hazards, nor could it have been so received; for neither the use nor the material of the adjoining houses is given, nor anything like an adequate specification of the use and internal structure of the houses insured. The use of one of them is mentioned, another is called a stable, and the use of two others may be guessed at from the kind of personal property insured in them. Surely no risk was ever taken on such representations. There being, therefore, no representations properly so called, there could be no error in the court in giving such instructions to the jury as allowed them to set aside all that were assumed to be such.

There was some evidence that the use of the property was changed after the contract, so as to increase the hazard; and there is an express stipulation that this suspends the insurance while such use continues. Without this stipulation such is the nature of the contract, and the company received the full advantage of this principle on the trial; but the facts were found against them.

Too much is attempted to be made of the relation of co-corporator in which the insured stands, in mutual insurance companies. In the act of insurance he is not so, but a stranger; and he becomes a corporator only by the consummation of that fact; and this does not convert the previous act of examination and description, by the agent of the company, into his act, and change it into a representation by him. He is therefore not chargeable with an over-estimate of the value of the property by the agent, unless he took some fraudulent part in it. Besides this, the by-law that prohibits an insurance that exceeds two-thirds of the

estimated value, is not intended as a condition of the contract; but as a direction of the discretion of the company's officers in making it. It is part of the form and not of the substance, and is, therefore, not essential, but merely directory.

On the questions of evidence, it is sufficient to say, that the value of the property at the time of the fire was put in issue by the pleadings, and therefore the evidence of it was relevant, and we cannot say that any of it was too remotely circumstantial. We discover no error in the case.

Judgment affirmed.